**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| OCTAVIO ALVARADO, PABLO MARTINEZ, OMAR GOMEZ, DANIEL GOMEZ, JOSE DE JESUS GARCIA, on behalf of themselves and all other similarly situated individuals,<br><br>          Plaintiffs,<br><br>               v.<br><br>REX NEDEREND AND SHERI NEDEREND (dba "Northstar Dairy," "Wildwood Farms," "Freeway Associates"),<br><br>          Defendants. | 1:08-cv-01099 OWW DLB<br><br>MEMORANDUM DECISION RE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (DOC. 40) |

**I. <u>INTRODUCTION</u>**

This is a wage-and-hour class action brought on behalf of Dairy workers employed by Rex and Sheri Nederend in, or around, Tulare and/or Kern County, California.  Declaration of Stan S. Mallison, Doc. 47, ¶2; *see also* Second Amended Class Action Complaint ("SAC"), Doc. 27, filed Jan. 19, 2010.  The action is brought on behalf of Plaintiffs and approximately 150 current and former non-exempt employees of Defendants for alleged violations of federal and state wage-and-hour laws.  *Id.*

The parties have entered into a Joint Stipulation of Settlement.  Under the terms of the Settlement, the

1

parties move for an order:  (1) conditionally certifying a Settlement Class; (2) preliminarily approving the Class Settlement; (3) appointing Class Representatives and Class Counsel; (4) approving class notice and related materials; (5) appointing a settlement administrator; and (6) scheduling a final approval hearing.  Doc. 40.

Although the pending motion was not filed until December 15, 2010, at which time the first available hearing date was March 7, 2011, the motion was advanced to and heard on January 10, 2011, to accommodate the settlement schedule.

## II. BACKGROUND

Plaintiffs allege that Defendants failed to pay overtime and minimum wages; failed to pay wages due at termination of employment; failed to provide all legally required meal periods and rest breaks; and failed to provide accurate, itemized employee wage statements. Plaintiffs sought to certify a class composed of themselves and similarly situated individuals and to recover back wages, interest, penalties, and attorneys' fees and costs from Defendants.  *See* SAC.

After the complaint was filed, Plaintiffs conducted substantial discovery and non-discovery investigation regarding class certification and the merits of their

2

claims.  Mallison Decl. at ¶ 34.  Among other discovery,
Plaintiffs served an extensive set of document requests,
demanding all of the critical payroll and timekeeping
information at issue in this case, as well as the names
and contact information for Defendants' former and
current employees.  After meeting and conferring
regarding these issues, Defendants produced the core
payroll and timekeeping information.  *Id*. at ¶ 34.
Defendants' timekeeping system is both computer and
"paper-based," consisting of paper time records for the
earlier part of the time period and a database for the
later part of the time period.  *Id*. at ¶ 35.  This
required Plaintiffs' counsel to employ both database
experts to analyze the data as well as to copy and review
tens of thousands of pages of documents.  *Id*.  Much of
the document and data review took place with Plaintiffs
and other witnesses, who guided counsel through time and
payroll records.  *Id*.

### III. <u>SUMMARY OF THE SETTLEMENT.</u>

     The case was resolved with the aid of a mediator's
proposal drafted by Mediator former District Court Judge
Raul Ramirez.  *Id*. at ¶ 37.  The Settlement Agreement
covers approximately 150 current and former Dairy
employees who worked for Defendants from July 30, 2004 to

3

September 7, 2010.  Mallison Decl., Ex. 1, Doc. 47-1,

Settlement Agreement ("Settlement") § I.N.

A.  <u>Gross Settlement Payment.</u>

Under the Settlement, Defendants will make Gross

Settlement Payments totaling $505,058.60 by November 8,

2011.  Mallison Decl. at ¶ 38.  This total sum will

cover:

- Settlement Shares to be paid to Class Members who
  submit valid claims;

- any payroll withholding on the Settlement Shares;

- a $10,000 payment to the California Labor and
  Workforce Development Agency for its share of the
  settlement of civil penalties;

- the Settlement Administrator's reasonable fees and
  expenses (no more than $15,000);

- (subject to court approval) payments to Plaintiffs,
  in addition to their Settlement Shares, of $7,500
  each in compensation of their services as Class
  Representatives;

- and (also subject to court approval) payments to
  Class Counsel of no more than 33.33% of the gross
  settlement amount for their reasonable attorneys'
  fees, as well as $10,000 in expenses incurred in
  investigating and prosecuting the case, preparing for

and negotiating at the mediation, documenting the
Settlement, securing approval of the Settlement, and
related tasks.

Settlement, § III.A - C.  There will be no reversion of
the Gross Settlement Payment to Defendants.  Mallison
Decl. at ¶ 39.

B.  **Payment of Settlement Shares.**

After the other amounts are deducted, the Gross
Settlement Amount (then called the "Net Settlement
Amount") will be distributed as Settlement Shares to all
Class Members who submit valid claims, *see* Settlement §
III, based upon the following allocation formula:

> The Settlement Share for each Claimant will be
> based on (a) that Claimant's total number of
> Months of Employment during the Class Period (b)
> divided by the aggregate number of Months of
> Employment of all Participating Class Members
> during the Class Period (with the division rounded
> to four decimal places) (c) multiplied by the
> value of the Net Settlement Amount.

Settlement § III.D.1.  This formula relies upon objective
evidence of the term of employment, which Class Members
can easily review and confirm.  Mallison Decl. at ¶ 40.
In addition, this information is readily available from
Defendants' records, and the Settlement Administrator can
apply the formula in a fair and transparent manner.  *Id.*[1]

_____

[1] Plaintiffs' counsel considered other, more complicated
methods, but determined that although these methods have some merit,

5

The parties estimate that, if all amounts sought under the Settlement are awarded, a Class Member's average Settlement Share will average approximately $2,000 per employee.  *Id*.

C.   <u>Distribution of Unclaimed Funds and Uncashed Checks.</u>

In the event that not all Class Members submit claims, the residue will be redistributed to those Class Members who do submit valid claims.  Settlement, § III.D.3.  The settlement agreement provides that in the event that checks issued to Class Members are not cashed, these monies will be donated to California Rural Legal Assistance, *Id*., § III.F.10, a public interest organizations that serves low-income workers in the same geographical area as the class.

D.   <u>Scope of the Release.</u>

The scope of the release by all Participating Class Members (all Class Members other than those who elect not

---

they were not without controversy and would likely lead to a myriad of objections.  Mallison Decl. at ¶ 41.  Plaintiffs' counsel represents that the formula employed in the Settlement is commonly used in wage-and-hour cases, and is appropriate in this case, where most workers experience the same working conditions and have similar claims that roughly correlate with the number of hours that they have worked.  *Id*.  Further, Plaintiffs' counsel maintains that, although their might be marginally better theoretical methods for calculating allocations amongst class members, the costs of obtaining and processing the information necessary and to make such calculations (especially given Defendants' reliance upon a paper based payroll system for part of the class period) would likely outweigh any benefits of using a more complex calculation method.  *Id*.

to participate in the Settlement) tracks the scope of

Plaintiffs' allegations:

> As of the date of the Judgment, all
> Participating Class Members hereby fully and
> finally release Defendants, and its parents,
> predecessors, successors, subsidiaries,
> affiliates, and trusts, and all of its
> employees, officers, agents, attorneys,
> stockholders, fiduciaries, other service
> providers, and assigns, from any and all claims,
> known and unknown, for or related to all claims
> based on or arising from the allegations that
> they were or are improperly compensated under
> federal, California, or local law (the "Class's
> Released Claims").  The Class's Released Claims
> include all such claims for alleged unpaid
> wages, including overtime compensation, missed
> meal-period and rest-break wages or penalties,
> and interest; related penalties, including, but
> not limited to, recordkeeping penalties, pay-
> stub penalties, minimum-wage penalties, missed
> meal-period and rest-break penalties, and
> waiting-time penalties; and costs and attorneys'
> fees and expenses.

Settlement, § III.G.2.


E.   <u>Objections and Opt-Out Process</u>

     Any Class Member who so wishes may object to or

comment on the Settlement; or may elect not to

participate in the Settlement.  The Class Notice fully

explains the objection/comment and opt-in procedures.

Settlement, § III.F.4., Exh. C.  The Class Notice, as

with all forms, will be provided to the Class Members in

English and Spanish.

1
2
**F.   Class Representative Payments; Class Counsel
      Attorneys' Fees Payment and Class Counsel Litigation
      Expenses Payment.**

3
4
     By a motion to be filed prior to the Final Approval

Hearing, Plaintiffs and their counsel will seek (and

5
Defendants have agreed not to oppose):

6
7
8
9
10
   • awards to Plaintiffs of Class Representative

     Payments of $7,500 each, in addition to their

     Settlement Shares, in compensation for their

     services as Class Representatives; and

11
12
13
14
15
16
   • awards to Class Counsel of a Class Counsel

     Attorneys' Fees Payment of not more than 33.33% of

     the Gross Settlement Amount and a Class Counsel

     Litigation Expenses Payment of not more than

     $10,000.

17
Settlement, § III.B.1-2.  The exact amounts requested,

18
and their justification, will be detailed in a motion,

19
brief, and declaration to be provided in conjunction with

20
the final approval of the settlement and are subject to

21
this court's final review and approval.

22
23
                    **IV. DISCUSSION**

24
**A.   Request for Conditional Certification of a Class for
      Settlement.**

25
26
     Plaintiffs request certification of the Class under

Rule 23(c)(1) which permits a court to "make a

27
28
conditional determination of whether an action should be

                              8

maintained as a class action, subject to final approval at a later date." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000). Conditional certification requires satisfaction of the pre-requisites of Rule 23(a) and (b). *Id.*

   1.   Rule 23(a) Requirements.

   Federal Rule of Civil Procedure 23(a) states in pertinent part that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all." As a threshold matter, in order to certify a class, a court must be satisfied that

> (1) the class is so numerous that joinder of all members is impracticable (the "numerosity" requirement); (2) there are questions of law or fact common to the class (the "commonality" requirement); (3) the claims or defenses of representative parties are typical of the claims or defenses of the class (the "typicality" requirement); and (4) the representative parties will fairly and adequately protect the interests of the class (the "adequacy of representation" requirement).

*In re Intel Secs. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981)(citing Fed. R. Civ. P. 23(a)).

   a.   Numerosity.

   Here, the proposed class is comprised of all individuals who have been employed by defendants in California as non-exempt Dairy workers during the period July 30, 2004 through September 7, 2010. There are

approximately 150 Class Members.  Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members.  *Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998).  Numerosity is also satisfied where joining all Class members would serve only to impose financial burdens and clog the court's docket.  *In re Intel Secs. Litig.,* 89 F.R.D. at 112. Here, the joinder of approximately 150 individual former employees would only further clog this court's already overburdened docket.

       b.   <u>Commmon Questions of Fact and Law.</u>

     Commonality exists when there is either a common legal issue stemming from divergent factual predicates or a common nucleus of facts resulting in divergent legal theories.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Here, the parties agree that potential Class Members advance claims that raise common questions of both law and fact, including:

- Whether Northstar authorized and permitted the Dairy workers to take required rest periods;
- Whether Northstar failed to pay Dairy workers an additional hour of wages for missed meal periods and rest breaks;
- Whether Northstar failed to pay all legally required

10

minimum wages and overtime compensation to hourly

production workers;

• Whether hourly production workers are owed waiting

time penalties because Northstar allegedly willfuly

failed to pay them additional wages for missed meal

periods and rest breaks, and for meal periods taken

during which they remained on duty, upon the

termination of their employment; and

• Whether Northstar's business practices violated

Business and Professions Code section 17200 *et seq.*

Every class member was paid under the same pay

practices as every other class member.  The Commonality

requirement is satisfied.

        c.   **Typicality.**

Typicality is satisfied if the representatives'

claims arise from the same course of conduct as the class

claims and are based on the same legal theory.  *See e.g.,*

*Kayes v. Pac. Lumber Co.,* 51 F.3d 1449, 1463 (9th Cir.

1995)(claims are typical where named plaintiffs have the

same claims as other members of the class and are not

subject to unique defenses).  Because every class member

was paid under the same pay practices as every other

class member, the representatives' claims are typical of

those of the other class members.

11

d.   <u>**Fair & Adequate Representation.**</u>

The final Rule 23(a) requirement is that the class representative fairly and adequately protect the interests of the class.  This requirement has two parts.  First, the representative's attorney must be "qualified, experienced, and able to conduct the litigation."  *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Secs. Litig.*, 122 F.R.D. 251, 257 (C.D. Cal. 1998).  Second, the suit must not be "collusive" and the named Plaintiff's interests must not be "antagonistic to the class."  *Id.*

All requirements are satisfied here.  Proposed class counsel, Stan S. Mallison, Esq., of the law firm Mallison & Martinez, is highly experienced in labor class action litigation for more than 15 years.  Mallison Decl. at ¶¶ 5-6.  He is highly qualified.

In addition, the Class Representatives' interests are completely aligned with those of the class.  Each Representatives' interest is in maximizing their recovery.  Although they will receive an additional $7,500, this appears to be reasonable to compensate them for the time and expense he devoted to pursuing this case.  *See* Declarations of Class Representatives, Docs. 41-45.

12

**2.   Certification of a Class under Rule 23(b)(3).**

Once the threshold requirements of Rule 23(a) are satisfied, a class may be certified only if the class action satisfies the requirements of Rule 23(b)(1), (b)(2), and/or (b)(3).  Here, the parties agree for purposes of the Settlement only that certification of the Class is appropriate under Rule 23(b)(3) because "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for the fair adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

**B.   Preliminary Approval of the Settlement.**

In reviewing the settlement, although it is not a court's province to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute," a court should weigh the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the stage of the proceedings, and the value of the settlement offer. *Chemical Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).  The court should also watch for collusion between class counsel and defendants.  *Id.* Preliminary approval of a settlement and notice to the

proposed class is appropriate: "[i]f [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval...." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (adding numbers). The Settlement proposed by the parties meets this test.

      1.   <u>The Settlement Was the Project of Informed, Arm's Length Negotiations.</u>

The Settlement was reached after informed, arm's length negotiations between the parties.  Both parties conducted extensive investigation and discovery allowing them to assess the strengths and weaknesses of the case. As such, the Settlement is the product of non-collusive negotiations.  *See* Mallison Decl. at ¶¶ 37-55. Plaintiffs' counsel had access to thousands of pages of documents and the full database of timekeeping entries for the relevant time period, which Plaintiffs' expert and Plaintiffs' counsel reviewed prior to and during the negotiations.  Counsel was also informed by numerous interviews with witnesses to the allegations.  Mallison Decl. at ¶ 48.

**14**

2. **The Proposed Settlement Has No "Obvious Deficiencies."**

The Settlement provides for a payment of $505,058.60 by Defendants, which is substantial given the relatively small size of the class (approximately 150 members, with approximately 40 full time employees at any given time) and the limited nature of the alleged violations at issue.  The average settlement share is nearly $2,000 per employee.  Mallison Decl. at ¶ 40.  All Settlement Shares to be paid under the Settlement are determined by the number of months each Class Member worked in a Covered Position.  *Id*.

The Class Representative Payments and the Class Counsel Attorneys' Fees Payment are appropriate, and are nevertheless subject to court approval at the Final Approval hearing.

Finally, the expected Settlement Administrator's fees and costs of approximately $15,000 are less than similar wage-and-hour settlements of this type and size.  Mallison Decl. at ¶ 39.

3. **The Settlement Falls Well Within the Range of Possible Approval.**

To determine whether a settlement "falls within the range of possible approval" a court must focus on "substantive fairness and adequacy," and "consider

15

1  plaintiffs' expected recovery balanced against the value

2  of the settlement offer."  *In re Tableware Antitrust*

3  *Litig.*, 484 F. Supp. 2d at 1080.

4      Defendants contest liability in this action and are

5  prepared to vigorously defend against these claims if the

6  action is not settled.  Mallison Decl. at ¶ 53.  If the

7  litigation proceeds, Plaintiffs would face significant

8  risks.  *Id.* at ¶ 53.  For example, the primary cause of

9  action in this case revolves around the provision of meal

10  periods.  However, the meaning of an employer's

11  obligation to provide meal periods under California law

12  is currently before the California Supreme Court (see

13  *Brinker Restaurant Corp. v. Superior Court (Hohnbaum)*,

14  165 Cal. App. 4th 25 (2008) (review granted)).  A defense

15  ruling in *Brinker* could impair Plaintiffs' ability to

16  proceed on these causes of action.

17      Even if Plaintiffs were to prevail, they would be

18  required to expend considerable additional time and

19  resources potentially outweighing any additional recovery

20  obtained through successful litigation.  In addition,

21  continued litigation would clearly delay payment to the

22  Class.  Mallison Decl. at ¶ 50.

23      In light of these risks, the significant recovery is

24  fair, reasonable, and adequate and is in the best

16

interest of the Settlement Class in light of all known facts and circumstances.

    4.   **The Release Is Appropriate Given Plaintiffs' Claims.**

As part of the Settlement, Class Members will be deemed to have released all claims "based on or arising from the allegations that they were or are improperly compensated under federal, California, or local law." Settlement, § III.  These released claims appropriately track the breadth of Plaintiffs' allegations in the action and the settlement does not release unrelated claims that class members may have against defendants.

    5.   **Collusion.**

There is no evidence of collusion here.


The settlement is preliminarily approved as fair and reasonable.

C.  **Proposed Class Notice & Administration.**

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.  A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."

*Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004)(internal quotations and citations omitted).

Here, the proposed Class Notice (Settlement, Exh. 2), and the manner of notice agreed upon by the parties (Settlement, § III.E.2.) is "the best notice practicable," as required under Rule 23(c)(2)(B).  All Class Members can be identified, and the Class Notice and the related materials (the Claim Form, Settlement, Exh. 3, and the form of Election Not to Participate in Settlement, id., Exh. 4) will be mailed directly to each Class Member.  The Class Notice adequately informs Class Members of the nature of the litigation, the essential terms of the Settlement, and how to make a claim under the Settlement, object to or comment on the Settlement, or elect not to participate in the Settlement.  Further, the Class Notice identifies Class Counsel, specifies the amounts of the Class Representative Payments, Class Counsel Attorneys' Fees Payment, and Class Counsel Litigation Expenses Payment that Plaintiffs and Class Counsel will seek, and explains how to obtain additional information regarding the action and the Settlement.  All of these forms and notices will be sent in English (as provided) and Spanish.

18

Within 7 days after the Court grants preliminary approval of the Settlement, Defendant will provide the Settlement Administrator with a spreadsheet containing the name and current or last known address of each Class Member, as well as the employment dates necessary to calculate Settlement Shares and administer the Settlement. Settlement, § III.E.2.a. The Class Notice and other materials will be mailed by the Settlement Administrator within 10 days following Defendants' delivery of the Class Members' data. *Id.*, § III.E.2.b. The Settlement Administrator also will send a reminder notice 14 days before the deadline for Class Members to submit claims. *Id.*, § III.E.2.e. The Settlement Administrator will use the National Change of Address database to locate any Class Members whose Notices are returned as undeliverable. *Id.*, § III.D. Not later than when the parties file their motion for final approval of the Settlement, the Settlement Administrator will submit a declaration describing efforts made to locate all Class Members. *Id.*, § III.E.2.f.

The procedures set forth in the Settlement provide the best possible notice to the Class Members.

**D.  Simpluris Inc. is an Appropriate Settlement Administrator.**

The parties have agreed upon and propose that the Court appoint Simpluris, Inc., to serve as the Settlement Administrator.  Simpluris is experienced in administering wage-and-hour class action settlements, and has bid its fees and costs for this Settlement at $15,000.  Mallison Decl. at ¶ 64, Exh. 5.

**E.  Settlement Approval Schedule.**

The following schedule for approval of the Settlement is adopted:

| Date | Event |
|------|-------|
| 1/10/10 | Preliminary Approval hearing (all dates that follow assume this date) |
| 1/24/11 | Defendants to provide to Settlement Administrator with an electronic data base containing Class Member contact information and data necessary to calculate settlement shares (7days after Preliminary Approval) |
| 2/4/11 | Settlement Administrator to mail Notice Packets to all Class Members (10 days after receiving Class Member information) |
| 2/25/11 | Date for Settlement Administrator to contact Class Members who have not submitted Claim Forms to remind them of the of the upcoming deadline |

20

| 3/7/11 | Last day for Class Members to comment on or object to Settlement (30 days after mailing of Notice Packets), to mail valid Elections Not to Participate in Settlement, and to mail valid claims for Settlement Shares (30 days after mailing of Notice Packets) |
| 3/14/11 | Last day for Settlement Administrator to report to parties on Class Members who have elected not to participate in Settlement or who have submitted claims (7 days after the deadline for submission of Elections Not to Participate in Settlement and Claims Forms) |
| 3/14/11 | Last day for Settlement Administrator to serve on the parties and file with the Court statement of due diligence in complying with its obligations under the settlement. |
| 3/25/11 | Due date for motion for final approval of settlement and plaintiff's separate motion for class representative fee and class counsel's attorneys' fees and expenses |
| 4/4/11 | Final approval hearing |

## V. CONCLUSION

For all the reasons set forth above:

(1) The Settlement Class is conditionally certified;

(2) The Class Settlement is preliminarily approved;

(3) Stan S. Mallison, Esq., of Mallison & Martinez is appointed Class Counsel;

(4) The named plaintiffs are appointed Class Representatives;

(5) The class notice and related materials are approved for distribution;

(5) Simpluris, Inc., is appointed settlement

21

1    administrator; and

2        (6) The Schedule set forth above is adopted, with the

3    final approval hearing set for April 4, 2011, at 10:00 am

4    in Courtroom 3 (OWW).

5        Plaintiffs shall submit a form of order consistent

6    with this decision within five (5) days following

7    electronic service.

8

9

10   SO ORDERED
     Dated:  January 11, 2011

11

12                              /s/ Oliver W. Wanger
                                 Oliver W. Wanger
13                         United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                22