Stan S. Mallison (SBN 184191)
Hector R. Martinez (SBN 206336)
Marco A. Palau (SBN 242340)
Jessica Juarez (SBN 269600)
MALLISON & MARTINEZ
1939 Harrison Street, Ste. 730
Oakland, CA 94612
Telephone: 510.832.9999
Facsimile:  510.832.1101
stanm@mallisonlaw.com

Attorneys for Plaintiffs

UNITED STATES FEDERAL DISTRIC COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| OCTAVIO ALVARADO, PABLO MARTINEZ, OMAR GOMEZ, DANIEL GOMEZ, JOSE DE JESUS GARCIA, on behalf of themselves and all other similarly situated individuals,<br><br>PLAINTIFF,<br><br>vs.<br><br>REX NEDEREND AND SHERI NEDEREND (dba "Northstar Dairy," "Wildwood Farms," "Freeway Associates")<br><br>DEFENDANTS | Case No. 1:08-cv-01099-OWW-MJS<br><br>DECLARATION OF STAN S. MALLISON IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT<br><br>Date:       May 16, 2011<br>Time:       10 a.m.<br>Judge:      Oliver W. Wanger<br>Courtroom:  3 |

I, Stan S. Mallison, declare the following:

1.  I am an attorney at law licensed to practice before all courts of the State of California and am a founding partner of Mallison & Martinez. My firm and I are counsel for Plaintiffs, in the above-captioned case. I am familiar with the above-captioned litigation and the dispute from which it arises. All statements made herein are on personal knowledge unless otherwise stated. If called as a witness, I

could competently testify as to matters stated herein. This declaration amends my similar declaration filed in support of Plaintiff's Motion for Preliminary Approval in this case.

2. This is a wage and hour class action on behalf of Dairy workers employed by Rex and Sheri Nederend (dba "Northstar Dairy," "Wildwood Farms," "Freeway Associates"). The action is brought for alleged violations of California labor laws. Plaintiffs also seek penalties for themselves, and other current and former employees, and the State of California pursuant to the California Labor Code Private Attorney General Act.

## I.   COUNSEL'S QUALIFICATIONS

### A.   Firm Description

3. The Law Offices of Mallison & Martinez is a class action law firm with offices in Oakland and Bakersfield, California. This firm was created in 2005 by Stan Mallison and Hector Martinez, attorneys with extensive class action and complex litigation experience at: (1) Lerach Coughlin Stoia & Robbins, (2) Milberg, Weiss, Bershad, Hynes, & Lerach, (3) Van Bourg Weinberg Roger & Rosenfeld (the largest union side labor law firm in the country), (4) Carter & Garay (a boutique class action law firm), and (5) California Rural Legal Assistance (the largest federal legal services provider to farm-workers in the country). The firm is nearly exclusively engaged in class action and private attorney general practice in employment law on behalf of employees. We have three full time attorneys on staff, and full time paralegal and employ several part-time professionals and assistants as needed. Mallison & Martinez researches and develops class action wage cases and litigates them independently, as in this case, or with prominent co-counsel.

4. The firm employs a "research model" approach to wage and hour class action litigation. In particular, we believe that the best way to litigate a case is to understand the facts and issues better than the employer, their counsel, and their experts. We do this by, where appropriate, relying heavily upon technology, investing enormous amounts of time and energy into legal and factual investigations, both pre-filing and early in the litigation, the early and often use of data and technology experts, and by developing comprehensive factual and legal expertise in the specialized areas in which we litigate.

5. The success of this model is exemplified by the following sample of cases the firm is currently litigating or has resolved:

a. <u>In re: Rhodia Erisa Litigation:</u> (Southern District of New York). This is ERISA Class Action on behalf of 3,945 workers of Rhodia, Inc. Appointed Co-lead Counsel with Robbins Umeda & Fink. (Class settlement approved for $2.4 million).

b. <u>Ibañez et al. v. Food Specialists Inc. et al.:</u> (Alameda Superior Court - Complex). This is a class action wage and hour case on behalf of 950 food service employees of Scott's Seafood Restaurants. Mallison & Martinez is the class counsel. (Class settlement approved for $1.485 million).

c. <u>Korbel Winery:</u> (Eastern District of California). This is a mid-sized wage and hour class action case involving approximately 600 winery workers. Mallison & Martinez has been appointed Class Counsel. (Class settlement approved for $750,000).

d. <u>Don Roberto Jewelers:</u> (Santa Barbara Superior Court). This is a wage and hour class action involving approximately 1400 retail workers. Mallison & Martinez is the originating and sole counsel appearing in the case. (Class settlement granted final approval for $1.225 million).

e. <u>Glenn Block v. eBay, Inc.:</u> (Santa Clara Superior Court). This is a consumer class action case filed on behalf of several numerous eBay consumers who were impacted by eBay's "bid against yourself" policy (co-counsel Lerach Coughlin Stoia Geller Rudman & Robbins). (Class settlement approved for $2.1 million).

f. <u>Benitez et al. v. Wilbur et al.:</u> (Eastern District of California). This is a class action wage and hour case on behalf of a class of dairy workers who were (1) not paid all wages largely due to being paid a fixed salary without regard to actual hours worked and (2) due to the employer's failure to record time. Mallison & Martinez is sole counsel. ($400,000 settlement granted final approval.)

g. <u>ABM California Industries Overtime Cases:</u> (San Francisco Superior Court). This is a large class action wage and hour case on behalf of approximately 35,000 California janitorial workers against ABM Industries Inc. and its subsidiaries. Mallison & Martinez are the originating attorneys and the case is litigated with the firms Weinberg, Roger, and Rosenfeld and Rastegar & Matern.

h. <u>Doe et al., v. DM Camp & Sons et al.:</u> (Eastern District of California). This is set of six related wage and hour class action cases filed on behalf of approximately 20,000 migrant/seasonal farm-workers who were not paid minimum wages by a group of the largest grape growers in the Central Valley. These cases are co-counseled with various firms, including Weinberg Roger Rosenfeld, Milberg LLP, Kingsly & Kinglsey and McNicholas & McNicholas. Mallison & Martinez is co-lead counsel in these cases and has been appointed co-lead counsel by Judge Ishii in the two larger cases of the group, <u>Giumarra</u> and <u>Sunview</u>.

i. <u>MAT Landscape:</u> (San Joaquin Superior Court). This is a mid-sized wage and hour case involving hundreds of Landscape workers. Mallison & Martinez is co-counsel with California Rural Legal Assistance. (Settlement approved for $725,000)

j. <u>La Salsa Overtime Cases:</u> (Santa Barbara Superior Court). This is a large wage and hour class action case involving thousands of La Salsa Restaurant workers. Mallison & Martinez are the originating and sole attorneys. (Class certification granted.)

k. <u>Vasquez v. Coast Roofing:</u> (Eastern District of California). This is a mid-sized wage and hour class action case involving hundreds of roofing workers. Mallison & Martinez is the originating and sole counsel appearing in the case. (Class settlement for $250,000 granted final approval).

l. <u>TBS Couriers:</u> (Alameda County Superior Court). This is a set of two mid-sized wage and hour class action cases involving hundreds of delivery drivers. Mallison & Martinez is sole counsel in these coordinated actions.

m. <u>Ontiveros v. Zamora:</u> (Eastern District of California). This is a mid-sized wage and hour class action case on behalf of automobile mechanics. In this case, counsel established two rulings of first impression: (1) the application of Cal. Labor Code §558 to individual defendants, and (2) the requirement under California Labor law to pay piece rate employees for time spent on non-piece work tasks.

n. <u>Lara et al. v. Sierra La Verne Country Club:</u> (Los Angeles Superior Court). This is a mid-sized wage and hour class action on behalf of service workers. Mallison & Martinez is originating counsel and co-counsels the case with Rastegar & Mattern. ($725,000 class settlement approved).

The above listing is just a sample of the more than 40 class action cases that Mallison & Martinez are or have been actively involved.

**B.     Attorneys on the Case**

6. I, Stan Mallison, am a former meat cutter and baker. I received my Bachelor of Art degree in Philosophy and Political Science from the California Polytechnic University at Pomona, California in 1990, graduating magna cum laude and first in both departments. I earned my Masters in Economics from the University of California at Riverside in 1993, where I had been admitted to, and substantially progressed through, the Economics Ph.D program. I earned my law degree from Stanford University in 1996, graduating with honors. During law school, I interned with the National Labor Relations Board, both at the Division of Judges in San Francisco as well the supervision of Chairman of the NLRB William B. Gould in Washington D.C.

7. Between 1996 and 1998, I worked in complex labor and employment litigation for the law firm of Van Bourg, Weinberg Roger and Rosenfeld, the largest union-side labor law firm in the country.

8. From 1998 to 2004 I worked for Milberg Weiss Bershad Hynes & Lerach ("Milberg Weiss") and joined Lerach Coughlin Stoia & Robbins ("Lerach Coughlin") when the Milberg firm divided in 2004 working there until February 2005. My work at these firms consisted of class action and private attorney general act work and included work on complex and large cases including: In Re Enron Securities Litigation ($7.2 Billion settlement); Mariana Island Garment-Worker Cases (a $20 million wage and hour settlement on behalf of 20,000 migrant workers on the island of Saipan); In Re 3Com Securities Class Action ($259 million settlement), a Federal Court challenge to the sufficiency of Federal Department of Transportation's NAFTA Truck safety regulations; In re Pemstar Securities (settlement of $12 million); Block v. eBay (settlement of $2.1 million); a Federal Court challenge to President Bush's Executive Order re: Project Labor Agreements, and dozens of other cases. As a result of my expertise in economics, I spent a considerable amount of his time at Milberg Weiss and Lerach Coughlin as liaison to experts and I continue in that role at Mallison & Martinez.

9. Since starting Mallison & Martinez with Hector Martinez, we have filed over 40 wage and hour class action cases. In the Erisa Class Action case, in re Rhodia Erisa Securities, the court approved our fee request that was justified based upon a fee rate of $525 and a multiplier of 1.59 (or an effective rate of $835 an hour). Fee awards for the firm have recently been awarded based, in part, upon my rate of $525 in several additional cases including: 1) by Judge Brick of the Alameda Superior Court in Ibañez et al. v. Food Specialists Inc. (Case No. RG 06 293981), 2) by Judge O'Neill of the Federal Court for the Eastern District of California in Ruiz et al v. Korbel (Case No. 1:08-cv-000417-LJO-SMS), and 3) by Judge Staffel of the Santa Barbara Superior Court in Miranda et al v. Don Roberto Jewelers, Inc (Case No. 01265947). I believe that my wage and hour class action rate of $595 an hour is a fair rate for my work given my experience level and success in this field.

10. Mr. Martinez received his Political Science Bachelor of Art degree in 1993 from the University of California at Davis. Mr. Martinez grew up in a socially conscious farm-worker

community, which motivated Mr. Martinez to work for the benefit of low-wage workers. Beginning in the mid-nineties, at the California Institute for Rural Studies, Mr. Martinez conducted extensive research on California's agricultural industry and the substandard environmental, health and working conditions and its impact on farmworkers and their families. Mr. Martinez then attended law school and earned his law degree from the Golden Gate University School of Law in 1998. During his law studies, he worked as a law clerk with Van Bourg, Weinberg, Roger and Rosenfeld, the largest union-side labor law firm in the country, under the direct supervision of named partner David Rosenfeld. From 1999 to 2004, Mr. Martinez worked at California Rural Legal Assistance, Inc. ("CRLA"), the largest non-profit law firm dedicated to farm-worker issues in the country. His work at CRLA included numerous representative private attorneys general actions under California's Unfair Competition Law, Business & Professions Code Sections 17200 *et seq.*, which were brought on behalf of thousands of agricultural employees and the general public. During his time with CRLA, Mr. Martinez was nominated for and received a fellowship with the California Wellness Foundation Violence Prevention Initiative, for his work with farm-worker youth throughout California.

11. Mr. Martinez and Stan S. Mallison formed the law firm of Mallison & Martinez in June 2005. As a partner of the firm, Mr. Martinez currently litigates several farm and low-wage worker wage and hour class actions. Since starting Mallison & Martinez with Stan Mallison, Mr. Martinez has litigated in over 50 wage and hour class action cases. In the Erisa Class Action case, in re Rhodia Erisa Securities, the court approved our fee request which was justified based upon a fee rate of $525 for Mr. Martinez and a multiplier of 1.59 (for an effective rate of $835 an hour). Fee awards for the firm have recently been awarded based, in part, upon his rate of $525 in three additional cases: 1) by Judge Brick of the Alameda Superior Court in Ibañez et al. v. Food Specialists Inc. (Case No. RG 06 293981), 2) by Judge O'Neill of the Federal Court for the Eastern District of California in Ruiz et al v. Korbel (Case No. 1:08-cv-000417-LJO-SMS), and 3) by Judge Staffel of the Santa Barbara Superior Court in Miranda et al v. Don Roberto Jewelers, Inc (Case No. 01265947). I believe that Mr. Martinez's wage and hour class action rate of $595 an hour is a fair rate for his work given his experience level and success in this field.

12. Mr. Palau is admitted to practice law in California and New York. He represents workers in wage and hour class actions and employment discrimination. Mr. Palau earned is law degree from Columbia University in 2005, where he served as an Editor for the Columbia Human Rights Law Review and Co-Managing Editor for the Jailhouse Lawyer's Manual (Spanish ed.). He earned MBA and BS degrees from California State University in 1999 and 1997, respectively. Prior to joining Mallison & Martinez, Mr. Palau was a staff attorney with California Rural Legal Assistance ("CRLA"), where he represented indigent individuals in civil rights matters, including federally subsidized housing and worker's rights issues. Mr. Palau is currently litigating dozens of class actions and employment discrimination as an experienced mid-level wage and hour attorney at Mallison & Martinez, including cases involving thousands of workers in the janitorial, restaurant, manufacturing, retail, construction, and agricultural industries.

13. Since starting Mallison & Martinez with Hector Martinez, Mr. Palau has litigated in dozens of wage and hour class action cases. Fee awards for the firm have recently been awarded based, in part, upon his rate of $395 in three cases: 1) by Judge Brick of the Alameda Superior Court in <u>Ibañez et al. v. Food Specialists Inc.</u> (Case No. RG 06 293981), and 2) by Judge O'Neill of the Federal Court for the Eastern District of California in Ruiz et al v. Korbel (Case No. 1:08-cv-000417-LJO-SMS); and 3) by Judge Staffel of the Santa Barbara Superior Court in Miranda et al v. Don Roberto Jewelers, Inc (Case No. 01265947). I believe that a fair current rate for Mr. Palau's work in contingent wage and hour class action cases, for purposes of lodestar cross-check analysis, is $450 an hour.

14. Ms. Juarez is admitted to practice before the California State Courts and before the United States District Court for the Northern & Eastern Districts of California. Ms. Juarez's practice is focused on employment litigation, including wage and hour, sexual harassment and discrimination matters.

15. Ms. Juarez received her Juris Doctorate from UC Hastings College of the Law in 2009, her Master's of International Affairs from Columbia University's School of International & Public Affairs (SIPA) in 2003, and her Bachelor of Arts in Political Science from UC Berkeley in 1999. Ms. Juarez has a long history of working with employment law and international human rights issues. In law school, Ms. Juarez was a law clerk with Talamantes, Villegas, Carrera LLP, a class action employment

law firm; was the Isabel and Alger Hiss Government Misconduct Fellow at the Center for Constitutional Rights, and served as a Student Counselor at the Employment Law Center. Prior to attending SIPA, Ms. Juarez also served as a Research & Liaison Officer at the International Labor Organization. Ms. Juarez is a member of the American Bar Association, The California Bar Association (Labor and Employment Section & International Law Section), the San Francisco Bar Association, the San Francisco La Raza Lawyers Association and the Hispanic National Bar Association. I believe that a fair current rate for Ms. Juarez's work in contingent wage and hour class action cases, for purposes of lodestar cross-check analysis, is $325 an hour.

16. Mr. Sutton is admitted to practice before the California State Courts. Mr. Sutton's practice is focused on employment litigation, including wage and hour, sexual harassment and discrimination matters. I believe that a fair current rate for Mr. Sutton's work in contingent wage and hour class action cases, for purposes of lodestar cross-check analysis, is $325 an hour.

17. Mr. Sutton graduated from the Hanover College in Hanover, Indiana with a Bachelor of Arts degree in Anthropology and Sociology. He obtained a Master of Arts from the University of California, Berkeley in Latin American Studies. He then graduated from the University of San Francisco School of Law and was admitted to the State Bar of California in 2010. Between September 2009 and April 2011 he was working with Liberation Law Group, P.C. ("LLG") on wage and hour, FEHA and personal injury cases and now with Mallison & Martinez. Mr. Sutton has applied for admission to the Eastern District of California.

18. Mallison & Martinez has had, and continues to have adequate resources to vigorously prosecute this case on behalf of the Class representatives and the Class members. Plaintiffs' counsel has spared no expense or taken any short cuts in this litigation and has hired a prominent database consultant for this case to aid in the discovery in this case.

19. Neither I, nor any member of the firm, have any personal affiliation or family relationship with the plaintiffs and proposed Class Representatives. The only relationship with these plaintiffs in this current litigation is the attorney-client relationship.

20. The firm chose the proposed class representatives because we believed that they provided good representation of the breadth of the class, both in terms of job categories, geographic location, and employment status.

21. The class representatives carried out all required tasks in this case to help us pursue this action, providing us with information, documents, insights, opinions, and necessary decisions to make this case successful. The class representative spent considerable time in their efforts on behalf of the class and deserve the modest incentive award requested in this case.

## II.  ALLEGATIONS OF THE COMPLAINT

22. The core of Defendants' violations revolve around the systematic failure to pay minimum and overtime wages; failure to keep accurate time records; failure to provide meal or rest breaks (or pay the statutory compensation due); and other related wage and hour issues.

### A.  Overtime & Regular Wages

23. Plaintiffs allege that Defendants failed to pay for all time worked wages. This claim largely stems from the practice of paying dairy workers on a salary basis while working these employees in excess of 10 hours without any additional compensation.

24. California Wage Order 14 requires payment of overtime for work in excess of 10 hours in a day. Plaintiffs, individually and on behalf of the Class, may enforce this requirement pursuant to Labor Code §1194(a).

25. Pursuant to Labor Code § 1194, Defendants' practices constitute a minimum wage violation and Defendants are liable for wages and liquidated damages. In addition, this unpaid time is also recoverable as overtime to the extent that including this time would put an employee over ten hours in a day or sixty in a week.

### B.  Failure to Provide Meal Periods

26. Plaintiffs allege that Class members are not provided with meal periods. The applicable wage order issued by the Industrial Welfare Commission is Wage Order 14-2001, which provides for

full 30 minute meal periods for all shifts in excess of six hours and two full 30 minutes meal periods for shifts in excess of 10 hours. Plaintiffs allege that proper meal periods were not provided to employees in this case.

27. Pursuant to California Labor Code §226.7, employers are required to pay additional wages for failure to provide meal periods in conformance with Wage Order 14.

28. California Labor Code §226.7 states:
(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

(b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

C. **Rest Period Wages**

29. Plaintiffs allege that they were not provided rest periods or paid additional wages in lieu thereof. Defendants did not schedule rest periods and actually discouraged employees from taking them, by understaffing the Dairy and overworking employees. California Labor Code §226.7 states:
(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

(b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

30. The requirements are found in section 12 of Industrial Welfare Commission Wage Order 14-2001 which requires the employees be provided with one ten minute rest break for every four hours of work or major fraction thereof.

D. **Wage Statement Violations**

31. Plaintiffs also allege that Defendants violated Labor Code § 226 by failing to provide accurate, itemized wage statements, in that the wage statements do not account for all hours worked (e.g., off-the-clock) and, consequently, do not account for all regular and overtime wages owed (e.g.,

off-the-clock time). In other words, Defendant failed to provide "accurate itemized statements" pursuant to California Labor Code 226 because the wage statements:

    a. Falsely understated the gross wages earned by failing to pay for all hours worked.

    b. Omitted or falsely understated the total hours worked.

    c. Falsely stated the net wages earned.

32. California Labor Code § 226(e) and (g) provides for penalties for the violations described above.

### E. Waiting Time Penalties

33. Plaintiffs also allege that Defendants failed to timely pay plaintiffs and terminated class members their full pay at the time of termination. Plaintiffs believe that based upon the various violations, rest and meal, overtime or unpaid wages, essentially all terminated employees were not paid all of their wages within 30 days of termination.

34. California Labor Code Sections 201 and 202 provide that such payment must be made within a few days of such termination. Defendants failed to timely pay Plaintiffs and the Class all of their wages due for work performed and this failure continued through the time in which Plaintiffs and the Class quit or were discharged from their employment with Defendant. As a result, Defendant has violated California Labor Codes §§ 201 and 202. As such, Plaintiffs and the class are entitled to penalties pursuant to California Labor Code §203.

### III. Litigation History of this Case

35. After the complaint was filed, Plaintiffs conducted substantial discovery regarding class certification and the merits of their claims. After meeting and conferring regarding these issues, and after agreeing upon a protective order, Defendants provided access to the core payroll and timekeeping information comprising approximately thousands of pages of documents as well as a list of over 60 class member names and contact information.

36.     Defendants' timekeeping and payroll system is heavily paper based requiring Plaintiffs' counsel to laboriously review and analyze thousand of pages of time and payroll records. Much of the document and data review took place with Plaintiffs and other witnesses who guided counsel through their own time and payroll records, strengthening counsel's understanding of the case, as well as their ability to litigate and mediate the case effectively. These records were core to the investigation and resolution of this case as it demonstrated in an objective manner what occurred during the class period.

37.     Plaintiffs also contacted a large number of the class members described above to confirm the basic allegations of the complaint and to arrange for declarants for mediation, litigation, class certification, and trial purposes.

## IV.    Settlement

38.     This case was resolved through the efforts of Mediator Judge Ramirez and resolved by means of a mediator's proposal on the terms proposed to this court. Although the initial mediation was unsuccessful at obtaining a settlement the parties continued to work with Judge Ramirez and he eventually resolved the case by means of his mediators proposal and second mediation. Judge Ramirez reviewed financial records, which were also provided to plaintiffs. Plaintiffs' counsel has negotiated numerous class action wage and hour settlements and believes that the settlement was improved by the use of a mediator in this case. The Settlement covers approximately 138 current and former Dairy employees who worked between July 30, 2004 to September 7, 2010 and provides substantial recovery for class members. Settlement § I.S.

Under the Settlement, Defendants will make a Gross Settlement Payments totaling $498,588.37 by November 8, 2011. If the settlement is paid earlier Defendants will benefit by not paying some, or all, of the 10% interest that runs from November 8, 2010 and could pay as little as $480,000 if completely paid by November 8, 2010. Defendants may pay more if payments are not on-time. The actual payments made to date are:

> Defendant has deposited a total of $496,569.86 in settlement funds. On March 7, 2011, $480,000.00 was wired to the Qualified Settlement Account and $16,569.86 was wired on March 9, 2011.

Declaration of Michael Bui ¶14.

39.     The payment will cover Settlement Shares to be paid to Class Members who submit valid claims; the employer share of payroll taxes on the Settlement Shares; a $10,000 payment to the

12

California Labor and Workforce Development Agency for its share of the settlement of civil penalties; the Settlement Administrator's reasonable fees and expenses (estimated to be approximately $15,000 which is typical of wage and hour cases of this size); and payments to Plaintiffs, in addition to their Settlement Shares, of $7,500 each in compensation of their services as Class Representatives and payments to Class Counsel of no more than 33.33% of the Gross Settlement Amount for their reasonable attorneys' fees and $10,000 in expenses incurred in investigating the case, prosecuting the case, preparing for and mediating the case, documenting the Settlement, securing approval of the Settlement, and related tasks. Settlement, § III.A.-C. There will be no reversion of the Gross Settlement Payment to Defendants.

40. After the other amounts are deducted, the Gross Settlement Amount (then called the "Net Settlement Amount") will be distributed as Settlement Shares to all Class Members who submit valid claims (see Exh. 1 (Settlement) § III), based upon the following allocation formula:

> The Settlement Share for each Claimant will be based on (a) that Claimant's total number of Months of Employment during the Class Period (b) divided by the aggregate number of Months of Employment of all Participating Class Members during the Class Period (with the division rounded to four decimal places) (with work completed after July 2009 multiplied by .3 to reflect changed practices); (c) multiplied by the value of the Net Settlement Amount.

Agreement, § III.D.1. The primary benefit of this formula is that it relies upon objective evidence of the term of employment, which Class Members can easily review and confirm for themselves. This information is readily available from Defendants' records, and the Settlement Administrator can apply the formula in a fair and transparent manner. The parties estimate that, if all amounts sought under the Settlement are awarded, a Class claimants average Settlement Share will be approximately $4,000.

41. Plaintiffs' counsel has reviewed this method of distribution and has determined that, on the whole, it serves the purpose of providing a simple and readily determinable method for distribution, while also allowing for a distribution that corresponds closely to the alleged damages and likely recoveries, which are based upon various theories of liability. Plaintiffs' counsel considered other, more complicated methods, but determined that although these methods have some merit, that they were not without controversy and would likely lead to a myriad of objections regarding their formulation and

implementation. The formula employed in the Settlement is commonly used in wage-and-hour cases, and is appropriate in this case, where most workers experience the same working conditions and have similar claims that roughly correlate with the number of hours that they have worked. *Id.* Further, although their might be marginally better theoretical methods for calculating allocations amongst class members, the costs of obtaining and processing the information necessary and to make such calculations (especially given defendants' paper based payroll system) would likely outweigh any benefits of using a more complex calculation method. The above method is simple, efficient, and uncontroversial and should be approved by the court.

42. In the event that not all Class Members submit claims, the residue will be redistributed to those Class Members who do submit valid claims. Settlement, § III.D.3. The settlement agreement provides that that in the event that checks issued to Class Members are not cashed, these monies will be donated to California Rural Legal Assistance. *Id.*, § III.F.10. This public interest organization is appropriate as it serves low income workers and commonly receives *cy pres* monies.

43. The scope of the release by all Participating Class Members (all Class Members other than those who elect not to participate in the Settlement) tracks the scope of Plaintiffs' allegations:

> As of the date of the Judgment, all Participating Class Members hereby fully and finally release Defendants, and its parents, predecessors, successors, subsidiaries, affiliates, and trusts, and all of its employees, officers, agents, attorneys, stockholders, fiduciaries, other service providers, and assigns, from any and all claims, known and unknown, for or related to all claims based on or arising from the allegations that they were or are improperly compensated under federal, California, or local law (the "Class's Released Claims"). The Class's Released Claims include all such claims for alleged unpaid wages, including overtime compensation, missed meal-period and rest-break wages or penalties, and interest; related penalties, including, but not limited to, recordkeeping penalties, pay-stub penalties, minimum-wage penalties, missed meal-period and rest-break penalties, and waiting-time penalties; and costs and attorneys' fees and expenses.

Ex 1 § III.G.2.

44. Any Class Member who so wishes may object to or comment on the Settlement; or elect not to participate in the Settlement. The Class Notice fully explains the objection/comment and opt-in procedures. Ex. 1 § III.F.4.

45. By this motion, Defendants did not oppose Plaintiffs' and their counsel's request for Class Representative Payments of $7500 each; and awards to Class Counsel of a Class Counsel

Attorneys' Fees Payment of a maximum of 33.33% of the Gross Settlement Amount and a Class Counsel Litigation Expenses Payment of up to $10,000. Settlement, § III.B.1-2.  The exact amounts requested, and their justification, is detailed below.

### V.     Opinion of Class Counsel and Representatives and Due Diligence

46.     Plaintiffs have conducted substantial document discovery regarding class certification and merits. Plaintiffs' counsel is of the view that central to any certification, litigation, mediation or resolution of a wage and hour case is obtaining the core payroll and timekeeping records.  Plaintiffs issued document requests and interrogatories to Defendants requesting the critical documents at issue in this case including Defendants' electronic payroll and timekeeping database and the names and contact information for Defendants' former and current employees.  After meeting and conferring regarding these issues, and in response to these requests, Defendants produced the core payroll and timekeeping information comprising thousands of pages of information.

47.     Defendants' timekeeping system is both electronic and paper based requiring Plaintiffs to laboriously review.  Much of the document and data review took place with clients and other witnesses who guided counsel through their employee time and payroll records strengthening Plaintiffs counsel's understanding of the case, as well as Plaintiffs counsel's ability to litigate effectively. Plaintiffs hired an expert to review and analyze the database for purposes of litigation and damage modeling.

48.     Based on Mallison & Martinez's investigation and discovery in this case and in consultation with the proposed Class Representatives and experts, I am of the opinion that the class settlement with Defendants for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable and adequate and is in the best interest of the putative class members, including defendants' current and former workers, in light of all known facts and circumstances, including the risk of significant delay, the defenses asserted by Defendants, the amount of potential damages in this case and uncertainties regarding class certification, success on the merits at trial and potential appellate review. It is my understanding and belief that the amount in question will not put Defendants' operations at risk or endanger the continued employment of currently employed class members. Defendants contest liability in this action, is represented by talented counsel, and is prepared to vigorously defend against

these claims if the action is not settled. If the litigation proceeds, Plaintiffs would face significant risk of success. For example, two primary causes of action in this case revolves around the provision of rest and meal periods. However, the meaning of an employer's obligation to provide meal periods under California law is currently before the California Supreme Court (see <u>Brinker Restaurant Corp. v. Superior Court</u> (Hohnbaum), 165 Cal. App. 4th 25 (2008) (review granted)), and resolution of the issue cannot be predicted with certainty. A defense ruling in <u>Brinker</u> could serious impair plaintiffs' abilities to proceed on these primary causes of action. As such, there is significant risk that legal developments could seriously diminish the value of Plaintiffs' claims. Moreover, even if Plaintiffs could demonstrate such violations, there still would be substantial risk the Class would not be certified by the Court. There is also a substantial risk that Defendants would prevail in its asserted defenses.

49. The Settlement provides for a substantial recovery. Even if Plaintiffs were to prevail, they would be required to expend considerable additional time and resources potentially outweighing any additional recovery obtained through successful litigation. In any case, continued litigation would clearly delay payment to the Class. As such, the Settlement with Defendants for the consideration and on the terms set forth in the Settlement is fair, reasonable, and adequate and is in the best interest of the Settlement Class in light of all known facts and circumstances, including the risk of the significant delay. The Settlement is in the best interest of judicial efficiency in this case as it would obviously eliminate a lengthy and intense class action lawsuit from this court's calendar. Plaintiffs counsel also reviewed these records and believe that absent such a payment structure it would have been difficult to obtain the scope of relief contained in this settlement agreement.

50. Since being retained by the proposed class representatives, Mallison & Martinez has had regular discussions and meetings with them regarding the progress of this litigation, the merits of the claims and the defenses asserted by defendants.

51. The Class Representatives have actively participated in my investigation of the issues in this case and the negotiations leading to the settlement of this matter. Plaintiffs' claims are essentially identical with the class as whole as they are Dairy workers who were paid under the same pay practices as every other class member.

52. The Settlement was reached after informed, arm's length negotiations between the parties. Both parties conducted extensive investigation and discovery allowing them to assess the strengths and weaknesses of the case. The Settlement is the product of non-collusive negotiations. For its part, Defendants contests liability in this action, is represented by talented counsel, and is prepared to vigorously defend against these claims if the action is not settled.

53. The claims administrator has received an actual payment of $496,569.86 by Defendants to cover all claims in this case - an adequate amount given the extremely modest size of the class, the serious financial condition of defendants and the dairy industry as a whole, and the limited nature of the alleged violations at issue. All Settlement Shares to be paid under the Settlement are determined by the number of pay periods each Class Member worked in a Covered Position from July 30, 2004, through September 7, 2010. The parties anticipate and will work towards ensuring a high claims rate, however, if there are unclaimed funds, all the these funds will be redistributed pro-rata to class member claimants in this case. The Settlement also provides that the funds from any claim checks that are actually written but not cashed will be provided to California Rural Legal Assistance. Plaintiffs contend (and Defendants will not contest) that both the Class Representative Payments and the Class Counsel Attorneys' Fees Payment are appropriate. Such matters will be determined by court approval at the Final Approval hearing. Finally, the expected Settlement Administrator's fees are in line, or lower than comparable wage-and-hour settlements of this type and size.

54. Based upon my conversations with them, and their declaration filed herewith, I know that Class Representatives believe that the settlement is fair and reasonable to all former and current Defendants workers and should be approved by the Court.

## VI. Compliance with This Court's Preliminary Approval Order

55. On January 24, 2011 this Court granted preliminary approval of the Settlement. Compliance with this order is described in the Compliance report for Simpluris Inc. Plaintiffs believe that all tasks have been carried out in substantial compliance with the letter and spirit of the order.

17
DECLARATION OF STAN MALLISON IN SUPPORT OF
FINAL APPROVAL OF CLASS ACTION SETTLEMENT    CASE NO. 1:08-CV-01099-OWW-MJS

### VI. Fees, Expenses, Claims Administration, and Incentive Awards

56. I have practiced class action litigation almost exclusively for more than a decade and am familiar with attorneys fees, cost, and incentive award issues. I continue to co-counsel numerous cases with large class action firms and therefore interact with them on these issues regularly. I am a member of the California Employment Lawyers Association ("CELA") and I am therefore in regular contact with other California attorneys who practice in the field of wage and hour class actions. Based on my participation in these organizations, my past experience, and my personal knowledge of the practices of other California attorneys who file and prosecute wage and hour class actions, a percentage of the recovery contingency fee of the type requested here is common in small wage and hour actions, both individual and class. Such a fee is necessary given the expenses and risk of wage and hour litigation. Notably, there are very few law firms litigating wage and hour claims on behalf of low income construction workers in the Central Valley largely because they find these expenses and risks make such litigation undesirable and unprofitable.

57. 100% of Mallison & Martinez's legal practice involves legal work that is on a contingency fee basis. Despite my firm's strong public interest perspective, my firm would not have agreed to represent plaintiffs in this case other than on a contingency fee basis unless it would have be confident that it would be awarded a contingency fee of approximately 1/3 of the potential recovery if we were successful in our efforts. In this case, we are requesting that the court approve 33.33% of the recovery. The rationale for this request relies upon the amount of lodestar invested by Mallison & Martinez litigating the myriad and unique legal issues in this case. The total lodestar in this case is as follows:

| Attorney | Hours | Rate | Lodestar |
|---|---|---|---|
| Stan Mallison | 176.25 | $595 | $104,868.75 |
| Hector Martinez | 85 | $595 | $50,575.00 |
| Marco Palau | 7 | $450 | $30,150.00 |
| Jessica Juarez | 37.5 | $325 | $12,187.50 |
| Joseph Sutton | 2.5 | $325 | $812.50 |

DECLARATION OF STAN MALLISON IN SUPPORT OF
FINAL APPROVAL OF CLASS ACTION SETTLEMENT          CASE NO. 1:08-CV-01099-OWW-MJS

The time expended consisted of the following types:

| Activity Type | Hours Expended |
|---|---|
| Client Communications | 14.50 |
| Discovery and First Investigator | 129.25 |
| Legal Research | 45.50 |
| Briefing | 97.75 |
| Settlement | 73.25 |

58.   Mallison and Martinez has incurred substantial costs of up to $10,827.70 in this case. A large portion of the costs in this case relate to mediation fees and Plaintiffs' discovery and investigative costs in the case including scanning and printing thousands of documents in the case and travel costs associated with interviewing witnesses. The remaining costs are modest and typical of a case like this and include filing fees, travel expenses, service, fax, Westlaw etc.

59.   The costs in this case are summarized as follows:

| Description | Amount |
|---|---|
| Two Full Day Mediations Sessions with Judge Raul Ramirez | $5,000.00 |
| Mediation Session with Judge Broadman | $367.50 |
| Database Expert Aaron Woolfson's Analysis | $719.20 |
| Filing Fees | $350.00 |
| Electronic Research Costs (Westlaw, PACER) | $1,155.00 |
| Atlas Languages | $800.00 |
| Telephone | Waived |
| Fax | Waived |
| Mileage at .51¢ per mile | $1,007.00 |
| Hotels/Meals | $259.00 |

DECLARATION OF STAN MALLISON IN SUPPORT OF
FINAL APPROVAL OF CLASS ACTION SETTLEMENT            CASE NO. 1:08-CV-01099-OWW-MJS

| | |
|---|---|
| Printing and Scanning Costs 9,750 pages at 12¢ per page | $1,170.00 |
| Postal | Waived |
| TOTAL: | $10,827.70 |

Plaintiffs request that this court order that $10,000.00 of these costs be reimbursed.

60. The proposed maximum request for attorneys' fees and reimbursement of costs and expenses are reasonable in light of the time and expense expended achieving the substantial benefits and should be approved. Class Counsel reached this result for the Class at significant risk to themselves of recovering no fee. As can be seen from the Declaration of Michael Bui, the class members are extremely difficult to locate and organize for purposes of a class action. Class Counsel was aware that the only way they would be compensated was to achieve a successful result. Yet, Class Counsel did not waiver in pursuing the interests of the Class, and invested the time and resources necessary to bring the Action to a successful conclusion.

## VII.  Exhibits

61. Attached as Exhibit 1 is a true and correct copy of the Settlement Agreement signed by the parties.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Dated: May 5, 2011

/s/ Stan S. Mallison
Stan S. Mallison