1

2

3

4

5                    UNITED STATES DISTRICT COURT

6              FOR THE EASTERN DISTRICT OF CALIFORNIA

7

| | |
|---|---|
| OCTAVIO ALVARADO, PABLO MARTINEZ, OMAR GOMEZ, DANIEL GOMEZ, JOSE DE JESUS GARCIA, on behalf of themselves and all other similarly situated individuals,<br><br>        Plaintiffs,<br><br>            v.<br><br>REX NEDEREND AND SHERI NEDEREND (dba "Northstar Dairy," "Wildwood Farms," "Freeway Associates"),<br><br>        Defendants. | 1:08-cv-01099 OWW DLB<br><br>MEMORANDUM DECISION RE UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (DOC. 59) |

### I. <u>INTRODUCTION</u>

     This is a wage-and-hour class action brought on

behalf of Dairy workers employed by Rex and Sheri

Nederend in, or around, Tulare and/or Kern County,

California.  Declaration of Stan S. Mallison, Doc. 60, ¶

2; *see also* Second Amended Class Action Complaint

("SAC"), Doc. 27, filed Jan. 19, 2010.  The action is

brought on behalf of Plaintiffs and approximately 150

current and former non-exempt employees of Defendants for

alleged violations of federal and state wage-and-hour

1

laws. *Id.*

The parties have entered into a Joint Stipulation of Settlement.  A January 11, 2011 memorandum decision: (1) conditionally certified a Settlement Class; (2) preliminarily approved the Class Settlement; (3) appointed Class Representatives and Class Counsel; (4) approved class notice and related materials; (5) appointed a settlement administrator; and (6) scheduled a final approval hearing for April 4, 2011.  Doc. 51.  By stipulation, the final approval hearing was continued to May 2, 2011, Doc. 55, and again to May 16, 2011, Doc. 58. Supplemental notice of the revised hearing date was mailed to all class members.  Declaration of Michael Bui, Doc. 66 at ¶ 9.  Plaintiffs have filed a motion for final approval of the settlement, Doc. 56, along with numerous supporting declarations, Docs. 60-66.  No objections to approval have been received.

## II. BACKGROUND

Plaintiffs allege that Defendants failed to pay overtime and minimum wages; failed to pay wages due at termination of employment; failed to provide all legally required meal periods and rest breaks; and failed to provide accurate, itemized employee wage statements. Plaintiffs sought to certify a class composed of

themselves and similarly situated individuals and to recover back wages, interest, penalties, and attorneys' fees and costs from Defendants.  *See* SAC.

After the complaint was filed, Plaintiffs conducted substantial discovery and non-discovery investigation regarding class certification and the merits of their claims.  Mallison Decl. at ¶ 34.  Among other discovery, Plaintiffs served an extensive set of document requests, demanding all of the critical payroll and timekeeping information at issue in this case, as well as the names and contact information for Defendants' former and current employees.  After meeting and conferring regarding these issues, Defendants produced the core payroll and timekeeping information.  *Id.* at ¶ 34. Defendants' timekeeping system is both computer and "paper-based," consisting of paper time records for the earlier part of the time period and a database for the later part of the time period.  *Id.* at ¶ 35.  This required Plaintiffs' counsel to employ both database experts to analyze the data as well as to copy and review tens of thousands of pages of documents.  *Id.*  Much of the document and data review took place with Plaintiffs and other witnesses, who guided counsel through time and payroll records.  *Id.*

### III. SUMMARY OF THE SETTLEMENT.

The case was resolved with the aid of a mediator's proposal drafted by Mediator former District Court Judge Raul Ramirez.  *Id*. at ¶ 37.   The Settlement Agreement covers approximately 150 current and former Dairy employees who worked for Defendants from July 30, 2004 to September 7, 2010.  Mallison Decl., Ex. 1, Doc. 47-1, Settlement Agreement ("Settlement") § I.N.

### A.   Gross Settlement Payment.

Pursuant to the Settlement, Defendants will make Gross Settlement Payments totaling between $480,000.00 and $498,588.37 by November 8, 2011, depending on the date of complete payment.  Mallison Decl. at ¶ 38.  As of March 9, 2011, Defendant has deposited $496,569.86 with the Settlement Administrator.  Bui Decl., Doc. 66, at ¶ 14.  This total sum will cover:

- Settlement Shares to be paid to Class Members who submit valid claims;

- any payroll withholding on the Settlement Shares;

- a $10,000 payment to the California Labor and Workforce Development Agency for its share of the settlement of civil penalties;

- the Settlement Administrator's reasonable fees and expenses (no more than $15,000);

4

- (subject to court approval) payments to Plaintiffs, in addition to their Settlement Shares, of $7,500 each in compensation of their services as Class Representatives; and

- (also subject to court approval) payments to Class Counsel of no more than 33.33% of the gross settlement amount for their reasonable attorneys' fees, as well as $10,000 in expenses incurred in investigating and prosecuting the case, preparing for and negotiating at the mediation, documenting the Settlement, securing approval of the Settlement, and related tasks.

Settlement, § III.A - C.  There will be no reversion of the Gross Settlement Payment to Defendants.  Mallison Decl. at ¶ 39.

B.  **Payment of Settlement Shares.**

    After the other amounts are deducted, the Gross Settlement Amount (then called the "Net Settlement Amount") will be distributed as Settlement Shares to all Class Members who submit valid claims, *see* Settlement § III, based upon the following allocation formula:

> The Settlement Share for each Claimant will be based on (a) that Claimant's total number of Months of Employment during the Class Period (b) divided by the aggregate number of Months of Employment of all Participating Class Members

5

                during the Class Period (with the division rounded
                to four decimal places) (c) multiplied by the
                value of the Net Settlement Amount.

Settlement § III.D.1.   This formula relies upon objective

evidence of the term of employment, which Class Members

can easily review and confirm.   Mallison Decl. at ¶ 40.

In addition, this information is readily available from

Defendants' records, and the Settlement Administrator can

apply the formula in a fair and transparent manner.   *Id.*[1]

The parties estimate that, if all amounts sought under

the Settlement are awarded, a Class Member's average

Settlement Share will average approximately $2,000 per

employee.   *Id.*

C.   <u>Distribution of Unclaimed Funds and Uncashed Checks.</u>

        In the event that not all Class Members submit

claims, the residue will be redistributed to those Class

Members who do submit valid claims.   Settlement, §

III.D.3.   The settlement agreement provides that in the

---

[1] Plaintiffs' counsel considered other, more complicated
methods, but determined that although these methods have some merit,
they were not without controversy and would likely lead to a myriad
of objections.   Mallison Decl. at ¶ 41.   Plaintiffs' counsel
represents that the formula employed in the Settlement is commonly
used in wage-and-hour cases, and is appropriate in this case, where
most workers experience the same working conditions and have similar
claims that roughly correlate with the number of hours that they
have worked.   *Id.*   Further, Plaintiffs' counsel maintains that,
although their might be marginally better theoretical methods for
calculating allocations amongst class members, the costs of
obtaining and processing the information necessary and to make such
calculations (especially given Defendants' reliance upon a paper
based payroll system for part of the class period) would likely
outweigh any benefits of using a more complex calculation method.
*Id.*

1    event that checks issued to Class Members are not cashed,

2    these monies will be donated to California Rural Legal

3    Assistance, *Id.*, § III.F.10, a public interest

4    organizations that serves low-income workers in the same

5    geographical area as the class.

6

7    D.   Scope of the Release.

8         The scope of the release by all Participating Class

9    Members (all Class Members other than those who elect not

10   to participate in the Settlement) tracks the scope of

11   Plaintiffs' allegations:

12

13            As of the date of the Judgment, all
             Participating Class Members hereby fully and
14            finally release Defendants, and its parents,
             predecessors, successors, subsidiaries,
15            affiliates, and trusts, and all of its
             employees, officers, agents, attorneys,
16            stockholders, fiduciaries, other service
             providers, and assigns, from any and all claims,
17            known and unknown, for or related to all claims
             based on or arising from the allegations that
18            they were or are improperly compensated under
             federal, California, or local law (the "Class's
19            Released Claims").  The Class's Released Claims
             include all such claims for alleged unpaid
20            wages, including overtime compensation, missed
             meal-period and rest-break wages or penalties,
21            and interest; related penalties, including, but
             not limited to, recordkeeping penalties, pay-
22            stub penalties, minimum-wage penalties, missed
             meal-period and rest-break penalties, and
23            waiting-time penalties; and costs and attorneys'
             fees and expenses.
24

25   Settlement, § III.G.2.

26

27

28
                              7

E.   Objections and Opt-Out Process

     Any Class Member who so wishes may object to or comment on the Settlement; or may elect not to participate in the Settlement.  The Class Notice fully explains the objection/comment and opt-in procedures. Settlement, § III.F.4, Exh. C.  The Class Notice, as with all forms, has been provided to the Class Members in English and Spanish.  A small number of notices have been returned based upon contact information that is no longer correct, and the Settlement Administrator is attempting to locate those individuals.  Doc. 56.

F.   Class Representative Payments; Class Counsel
     Attorneys' Fees Payment and Class Counsel Litigation
     Expenses Payment.

     By a motion to be filed prior to the Final Approval Hearing, Plaintiffs and their counsel will seek (and Defendants have agreed not to oppose):

- awards to Plaintiffs of Class Representative Payments of $7,500 each, in addition to their Settlement Shares, in compensation for their services as Class Representatives; and

- awards to Class Counsel of a Class Counsel Attorneys' Fees Payment of not more than 33.33% of the Gross Settlement Amount and a Class Counsel Litigation Expenses Payment of not more than

1    $10,000.

2    Settlement, § III.B.1-2.

3

4                        **IV. DISCUSSION**

5    A.   **Certification of a Class for Settlement.**

6         As the Class has only been conditionally certified,

7    final certification is required and is governed by

8    Federal Rule of Civil Procedure Rule 23.

9

10        1.   **Rule 23(a) Requirements.**

11        Federal Rule of Civil Procedure 23(a) states in

12   pertinent part that "[o]ne or more members of a class may

13   sue or be sued as representative parties on behalf of

14   all."  As a threshold matter, in order to certify a

15   class, a court must be satisfied that

16             (1) the class is so numerous that joinder of all
17             members is impracticable (the "numerosity"
                requirement); (2) there are questions of law or
18             fact common to the class (the "commonality"
                requirement); (3) the claims or defenses of
19             representative parties are typical of the claims
                or defenses of the class (the "typicality"
20             requirement); and (4) the representative parties
                will fairly and adequately protect the interests
21             of the class (the "adequacy of representation"
22             requirement).

23   *In re Intel Secs. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal.

24   1981)(citing Fed. R. Civ. P. 23(a)).

25

26        a.   **Numerosity.**

27        Here, the proposed class is comprised of all

28   individuals who have been employed by defendants in

                                9

California as non-exempt Dairy workers during the period July 30, 2004 through September 7, 2010.  There are approximately 150 Class Members.  Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members.  *Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998).  Numerosity is also satisfied where joining all Class members would serve only to impose financial burdens and clog the court's docket.  *In re Intel Secs. Litig.,* 89 F.R.D. at 112. Here, the joinder of approximately 150 individual former employees would only further clog this court's already overburdened docket.

       b.   <u>Commmon Questions of Fact and Law.</u>

     Commonality exists when there is either a common legal issue stemming from divergent factual predicates or a common nucleus of facts resulting in divergent legal theories.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Here, the parties agree that potential Class Members advance claims that raise common questions of both law and fact, including:

- Whether Northstar authorized and permitted the Dairy workers to take required rest periods;

- Whether Northstar failed to pay Dairy workers an additional hour of wages for missed meal periods and

10

rest breaks;

- Whether Northstar failed to pay all legally required minimum wages and overtime compensation to hourly production workers;

- Whether hourly production workers are owed waiting time penalties because Northstar allegedly willfuly failed to pay them additional wages for missed meal periods and rest breaks, and for meal periods taken during which they remained on duty, upon the termination of their employment; and

- Whether Northstar's business practices violated Business and Professions Code section 17200 *et seq*. Every class member was paid under the same pay practices as every other class member. The Commonality requirement is satisfied.

    c.   <u>Typicality.</u>

Typicality is satisfied if the representatives' claims arise from the same course of conduct as the class claims and are based on the same legal theory. *See e.g., Kayes v. Pac. Lumber Co.,* 51 F.3d 1449, 1463 (9th Cir. 1995)(claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses). Because every class member was paid under the same pay practices as every other

11

class member, the representatives' claims are typical of those of the other class members.

          d.  **Fair & Adequate Representation.**

    The final Rule 23(a) requirement is that the class representative fairly and adequately protect the interests of the class.  This requirement has two parts.  First, the representative's attorney must be "qualified, experienced, and able to conduct the litigation."  *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Secs. Litig.*, 122 F.R.D. 251, 257 (C.D. Cal. 1998).  Second, the suit must not be "collusive" and the named Plaintiff's interests must not be "antagonistic to the class."  *Id*.

    All requirements are satisfied here.  Proposed class counsel, Stan S. Mallison, Esq., of the law firm Mallison & Martinez, is highly experienced in labor class action litigation for more than 15 years.  Mallison Decl. at ¶¶ 5-6.  He is highly qualified.

    In addition, the Class Representatives' interests are completely aligned with those of the class.  Each Representatives' interest is in maximizing their recovery.  Although they will receive an additional $7,500, this appears to be reasonable to compensate them for the time and expense he devoted to pursuing this

case.  *See* Declarations of Class Representatives, Docs.
41-45.

2.  <u>Certification of a Class under Rule 23(b)(3).</u>

Once the threshold requirements of Rule 23(a) are
satisfied, a class may be certified only if the class
action satisfies the requirements of Rule 23(b)(1),
(b)(2), and/or (b)(3).  Here, the parties agree for
purposes of the Settlement only that certification of the
Class is appropriate under Rule 23(b)(3) because
"questions of law or fact common to the members of the
class predominate over any questions affecting only
individual members, and ... a class action is superior to
other available methods for the fair adjudication of the
controversy."  Fed. R. Civ. P. 23(b)(3).

B.  <u>The Terms of the Preliminary Approval Have Been
Satisfied.</u>

The January 27, 2011 preliminary approval of the
Settlement and conditional certification of the Class
ordered that the Class be sent notice of the Settlement,
approved the form of notice proposed by the parties,
approved the forms of claims for settlement share and
election not to participate, and set the hearing for
final approval.  Doc. 53.  The claims administrator,
Simpluris, has carried out this Court's order to the

extent possible.  *See generally* Bui Declaration, Doc. 66.
On March 1, 2011 class Notice Packets were mailed to all
125 class members with a known address.  *Id*. at ¶7.  The
U.S. Postal Service returned 51 Notice Packets to the
Settlement Administrator.  *Id*. ¶ 10.  Best efforts to
trace these individuals and/or find their updated
addresses were conducted by use of "Accurint" a reputable
research tool owned by Lexis-Nexis and remailed 53 class
notice packets.  *Id*.  However, despite best efforts,
Simpluris did not obtain any claims from these 53
mailings.  *Id*.  On March 23, 2011, Simpluris also mailed
out 111 reminder notices to class members who had not yet
responding to the initial notice.  *Id*. at ¶ 8.

    Despite these difficulties, 56 claims (40.57%) were
received and accepted by the Claims Administrator.  *Id*. ¶
11.  According to Plaintiffs, this figure is extremely
high for the type of workforce at issue in this case.
Doc. 70 at 8.  No claims have been rejected.  Bui Decl.,
Doc. 66, at ¶ 11.  Zero individuals submitted elections
not to participate.  *Id*. at ¶ 12.  As of May 5, 2011, no
class member has submitted an objection to the
Settlement.  *Id*. at ¶ 13.

C.   <u>Approval of the Settlement.</u>
    "The court must approve any settlement ... of the

14

claims ... of a certified class." Fed. R. Civ. P.
23(e)(1)(A).  A settlement may be approved only after a
hearing and on finding that it is fair, reasonable, and
adequate.  Fed. R. Civ. P. 23(e)(1)(C).  Such approval is
required to make sure that any settlement reached is
consistent with plaintiffs' fiduciary obligations to the
class.  *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995,
996 (9th Cir. 1985). The court also serves as guardian
for the absent class members who will be bound by the
settlement, and therefore must independently determine
the fairness of any settlement.  *Id.*  However, the
district court's role in intruding upon what is otherwise
a private consensual agreement is limited to the extent
necessary to reach a reasoned judgment that the agreement
is not the product of fraud or collusion between the
negotiating parties, and that the settlement, taken as a
whole, is fair, reasonable, and adequate to all
concerned.  *FDIC v. Alshuler*, 92 F.3d 1503, 1506 (9th
Cir. 1996).  Therefore, the settlement hearing is not to
be turned into a trial or rehearsal for trial on the
merits.  *Officers for Justice v. Civil Service Com.*, 688
F.2d 615, 625 (9th Cir. 1982).  Ultimately, the district
court's determination is nothing more than an amalgam of
delicate balancing, gross approximations, and rough

15

justice.  *Id*.

     In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, a district court may consider some or all of the following factors: (1) the strength of the Plaintiff's case (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the stage of the proceedings; (7) the views and experience of counsel; (8) any opposition by class members; (9) the presence of a governmental participant. *Linney v. Cellular Alaska Pshp*., 151 F.3d 1234,1242 (9th Cir. 1998).  This list of factors is not exclusive and the court may balance and weigh different factors depending on the circumstances of each case.  *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1376 (9th Cir. 1993).

     1.   <u>The Relative Strengths of the Parties' Cases</u>
          <u>Supports Approval of the Settlement.</u>

     Defendants contest liability in this action and are prepared to vigorously defend against these claims if the action is not settled.  Mallison Decl. at ¶ 48.  If the litigation proceeds, Plaintiffs would face significant risks.  *Id*.  For example, the primary cause of action in

1   this case revolves around the provision of meal periods.

2   However, the meaning of an employer's obligation to

3   provide meal periods under California law is currently

4   before the California Supreme Court (see *Brinker*

5   *Restaurant Corp. v. Superior Court (Hohnbaum)*, 165 Cal.

6   App. 4th 25 (2008) (review granted)).  A defense ruling

7   in *Brinker* could impair Plaintiffs' ability to proceed on

8   these causes of action.

9        Even if Plaintiffs were to prevail, they would be

10  required to expend considerable additional time and

11  resources potentially outweighing any additional recovery

12  obtained through successful litigation.  In addition,

13  continued litigation would clearly delay payment to the

14  Class.  *See* Mallison Decl. at ¶ 48.

15       In light of these risks, the significant recovery is

16  fair, reasonable, and adequate and is in the best

17  interest of the Settlement Class in light of all known

18  facts and circumstances.

19       2.   The Settlement Amount is Fair and Reasonable.

20       The Settlement provides for a payment of almost

21  $500,000.00 by Defendants, which is substantial given the

22  relatively small size of the class (approximately 150

23  members, with approximately 40 full time employees at any

24  given time) and the limited nature of the alleged

violations at issue.  The average settlement share is nearly $4,000 per employee.  Mallison Decl. at ¶ 40.  All Settlement Shares to be paid under the Settlement are determined by the number of months each Class Member worked in a Covered Position.  *Id*.

The Class Representative Payments and the Class Counsel Attorneys' Fees Payment are appropriate, and are separately approved below.

Finally, the expected Settlement Administrator's fees and costs of approximately $15,000 are less than similar wage-and-hour settlements of this type and size. Mallison Decl. at ¶ 39.

3.   <u>The Release Is Appropriate.</u>

As part of the Settlement, Class Members will be deemed to have released all claims "based on or arising from the allegations that they were or are improperly compensated under federal, California, or local law." Settlement, § III.  These released claims appropriately track the breadth of Plaintiffs' allegations in the action and the settlement does not release unrelated claims that class members may have against defendants.

4.   <u>The Settlement Was the Project of Informed, Arm's Length Negotiations.</u>

The Settlement was reached after informed, arm's

18

1    length negotiations between the parties.  Both parties

2    conducted extensive investigation and discovery allowing

3    them to assess the strengths and weaknesses of the case.

4    As such, the Settlement is the product of non-collusive

5    negotiations.  *See* Mallison Decl. at ¶¶ 35-54.

6    Plaintiffs' counsel had access to thousands of pages of

7    documents and the full database of timekeeping entries

8    for the relevant time period, which Plaintiffs' expert

9    and Plaintiffs' counsel reviewed prior to and during the

10   negotiations.  Counsel was also informed by numerous

11   interviews with witnesses to the allegations.  Mallison

12   Decl. at ¶ 36.  In addition, there is no evidence of

13   collusion.

14

15        5.   <u>Reaction of the Class Members.</u>

16        "The reactions of the members of a class to a

17   proposed settlement is a proper consideration for the

18   trial court."  *Vasquez v. Coast Valley Roofing*, 266

19   F.R.D. 482 (E.D. Cal. 2010) (citing 5 Moore's Fed.

20   Practice § 23.85[2][d]).  Class Representative's opinion

21   of the settlement are especially important as "[t]he

22   representatives' views may be important in shaping the

23   agreement and will usually be presented at the fairness

24   hearing; they may be entitled to special weight because

25   the representatives may have a better understanding of

1  the case than most members of the class."  Manual for

2  Complex Litigation, Third, § 30.44 (1995).

3      Here, the Class Representatives strongly support the

4  settlement.  See Declaration of Octavio Alvarado, Doc.

5  65, at ¶ 5; Declaration of Daniel Gomez, Doc. 63, at ¶ 5;

6  Declaration of Pablo Martinez, Doc. 61, at ¶ 5;

7  Declaration of Omar Gomez, Doc. 62, at ¶ 5; Declaration

8  of Jesus Garcia, Doc. 64, at ¶ 5.  Each of these Class

9  Representatives and their attorneys have extensive

10  understanding of the merits of this settlement having

11  participated extensively in the strategy, formulation,

12  filing, litigation and negotiation process.  See Alvarado

13  Decl. at ¶¶ 3-4; Martinez Decl. at ¶¶ 3-4; O. Gomez Decl.

14  at ¶¶ 3-4; D. Gomez Decl. at ¶¶ 3-4; Garcia Decl. at ¶¶

15  3-4.  There have been no objections to the settlement by

16  Class Members or any other members of the public.

17      The settlement is fair and reasonable.

18  D.   Class Counsel's Requested Fees and Costs.

19      Courts have long recognized the "common fund" or

20  "common benefit" doctrine, under which attorneys who

21  create a common fund or benefit for a group of persons

22  may be awarded their fees and costs to be paid out of the

23  fund.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th

24  Cir. 1998).  "[A] lawyer who recovers a common fund for

the benefit of persons other than himself or his client

is entitled to a reasonable attorney's fee from the fund

as a whole." *Staton v. Boeing Co.*, 327 F.3d 938, 972

(9th Cir. 2003) (quoting *Boeing Co. v. Van Gemert*, 444

U.S. 472, 478 (1980)).  Awarding a percentage of the

common fund is particularly appropriate "'when each

member of a certified class has an undisputed and

mathematically ascertainable claim to part of a lump-sum

judgment recovered on his behalf.'"  *Id.* (quoting *Boeing

Co.,* 444 U.S. at 478-79).

        Here, where the Settlement requires lump sum

allocations to each Settlement Class and applies

distribution formulas pursuant to which each Class Member

who submits a valid claim will receive a mathematically

ascertainable payment, application of the percentage of

common fund doctrine appropriate.  The typical range of

acceptable attorneys' fees in the Ninth Circuit is 20% to

33 1/3% of the total settlement value, with 25%

considered the benchmark.  *Powers v. Eichen*, 229 F.3d

1249, 1256 (9th Cir. 2000); *Hanlon*, 150 F.3d at 1029;

*Staton*, 327 F.3d at 952.  However, the exact percentage

varies depending on the facts of the case, and in "most

common fund cases, the award exceeds that benchmark."

*Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D.

1  Cal. 2009); *see also In re Activision Sec. Litig.*, 723 F.

2  Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly all common

3  fund awards range around 30%").

4      Class Counsel seeks an attorney's fee award of

5  $165,523, or 33 1/3% of the Settlement amount.  This is

6  significantly less than Class Counsel's asserted lodestar

7  of $198,593.75.[2]  When assessing whether the percentage

8  requested is reasonable, courts look to factors such as:

9  (a) the results achieved; (b) the risk of litigation; (c)

10  the skill required, (d) the quality of work; (e) the

11  contingent nature of the fee and the financial burden;

12  and (f) the awards made in similar cases.  *Vizcaino v.*

13  *Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir.2002); *Six*

14  *Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301

15  (9th Cir.1990).

16

17      1.   <u>The Results Achieved.</u>

18

19  _____

20  [2] The district court has reviewed the billing records of Plaintiffs'
counsel, submitted as attachments to the Declaration of Stan
Mallison.  Doc. 60.  These records reveal that Stan Mallison, a
partner who bills at $595 per hour spent approximately 176 hours on
this case; Hector Martinez, a partner who also bills at $595 per
hour spent approximately 85 hours on this case; Marco Palau, an
associate who bills at $450 per hour spent approximately 7 hours on
the case; Jessica Juarez, an associate who bills at $325 per hour,
spent approximately 37.5 hours on the case, and Joseph Sutton,
another associate who bills at $325 per hour, spent approximately
2.5 hours on the case.  *See id.* at ¶ 57.  The billed lodestar is
reasonable, given that this case involved considerable
investigation, the filing of a fairly complex, thirty-six page
complaint, the litigation of a motion to dismiss followed by the
filing of an amended complaint, and the subsequent settlement of a
putative class action, requiring preliminary approval, notice, and
final approval. Moreover, the settlement only provides for partial
recovery of the total lodestar.

The individual claims in the case concerned defendants' failure to pay class members for portions of days on an intermittent basis and failure to provide proper rest and meal periods.  Such claims would not ordinarily produce large recoveries per claimant.  Here, the recovery of nearly $500,000 will provide the 56 claimant employees with a net recovery of over $4,000 per employee.  Mallison Decl ¶ 40.  This is substantial.

2.   <u>The Risks Involved.</u>

There were significant risks in pursuing this case. One of the primary issues involved in this case has to do with the timely provision of rest and meal periods – an issue that is currently before the California Supreme Court in the *Brinker* and *Brinkley* cases. It is unknown what the outcome of the Supreme Court's decision will be, but it is possible that decision could seriously damage the recovery in this case.

The Defendants also posed serious defenses to the claims. And defense counsel demonstrated that they were very able in defense of their client.

Plaintiffs' Counsel invested $198,593.75 in lodestar and $10,827.70 in costs in litigating this case with no guarantee or recovery.

3.   **The Skill Required.**

This case required specialized skills in finding and contacting largely Spanish speaking workers, and in litigating cutting-edge legal theories surrounding rest and meal periods and issues of proof in light of the limited recording keeping by Defendant.  In addition to the large number of witness interviews, the case also involved an intensive use and extrapolation from the existing records.  Class Counsel has extensive experienced in class action wage and hour litigation of this nature.  See Mallison Decl. at ¶¶3-17.

4.   **Quality of the Work.**

Counsel thoroughly investigated the case, researching numerous potential claims to find those that could be developed and litigated.  Eventually, several sophisticated legal claims were advanced, based on, among other things, clock-rounding and on-duty meal period theories, despite the lack of clear caselaw on point.

5.   **The Contingent Nature of the Fee and the Financial Burden**

This case was conducted on a contingent fee basis against a well-represented Defendant.  Counsel has received no money from plaintiffs or any other source to litigate this case.  The plaintiffs are all low-wage

24

workers who could never meaningfully contribute to any such expenses.  Plaintiffs' counsel accepted the entire risk of litigation.  Despite such challenges, Class Counsel were able to persuade Defendant that it faced significant liability exposure such that it was willing to pay nearly $500,000 to settle Plaintiff's claims.

     6.   <u>**Awards in Similar Cases.**</u>

    The requested fee is in line with similar wage and hour cases litigated in the Central Valley. For example, this court has awarded the following fees:

- 33.3% in *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482 (E.D. Cal. 2010), Case No. 1:07-cv-00227 OWW DLB;

- 30% in *Vasquez v. Aartman*, E.D. Cal. Case No. 1:02-CV05624 AWI LJO;

- 31.25% in *Baganha v. California Milk Transport*, Case No. 1:01-cv-05729 AWI LJO;

- 33.3% in *Randall Willis et al. v. Cal Western Transport*, and *Earl Baron et al. v. Cal Western Transport*, Coordinated Case No. 1:00-cv-05695 AWI LJO;

- 33.3% in *Benitez, et al. v. Jeff Wilbur and Lisa Wilbur*, Case No. 1:08-cv-01122 LJO GSA;

- 33.3% in *Chavez, at al. v. Petrissans*, Case No. 1:08-cv-00122 LJO GSA;

25

1

2   In light of the overall success, the skill with which the

3   case was prosecuted, the substantial legal risks

4   associated with Plaintiffs' claims, the financial risks

5   borne by Plaintiffs' Counsel, and similar awards made in

6   similar cases, the requested attorney's fee award of 33

7   1/3% of the total recovery (or $165,523) is reasonable

8   under the circumstances.

9

10  E.    Class Counsel's Request for Costs.

11        Class Counsel incurred out-of-pocket costs totaling

12  $10,827.70, and expect to incur modest additional in

13  costs related to the final approval of the Settlement.

14  *See* Settlement Agreement III.B.1. The bulk of the

15  incurred costs included filing fees, mediator fees (of

16  $5,367.50), ground transportation, copy charges, computer

17  research, and database expert fees.  *Id.; see also*

18  Mallison Decl. ¶ 58.  Such costs are routinely reimbursed

19  in these types of cases.  *See, In re United Energy Corp.*

20  *Sec. Litig.*, 1989 WL 73211, at *6 (C.D. Cal. 1989)

21  (quoting Newberg, Attorney Fee Awards, § 2.19 (1987));

22  *see e.g. Vasquez*, 266 F.R.D. at 493 (Class Counsel

23  litigation expenses payment of approximately $9,000 was

24  fair and reasonable in similar case).

25        Here, the actual costs incurred are greater than the

26

27

28

26

1   estimated $10,000, which was included in the Class Notice

2   and to which no Class Member objected.  Plaintiffs

3   request, which is capped at $10,000 is reasonable.

4

5   F.   Class Representative Enhancement.

6        Pursuant to the Settlement, Plaintiff seeks an

7   enhancement in the amount of $7,500 to the named

8   Plaintiffs Octavio Alvarado, Pablo Martinez, Omar Gomez,

9   Daniel Gomez, and Jose de Jesus Garcia.  Mallison Decl. ¶

10  45.  This payment is intended to recognize the time and

11  efforts that the named Plaintiffs spent on behalf of the

12  Class Members. *Id.; see also* Declarations of Octavio

13  Alvarado, Pablo Martinez, Omar Gomez, Daniel Gomez, and

14

15  Jose de Jesus Garcia, Docs. 61-65.

16       "Courts routinely approve incentive awards to

17  compensate named plaintiffs for the services they provide

18  and the risks they incurred during the course of the

19  class action litigation." *Ingram v. The Coca-Cola*

20  *Company*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (internal

21  quotations and citations omitted).  In *Coca-Cola*, the

22  Court approved service awards of $300,000 to each named

23  plaintiff in recognition of the services they provided to

24  the class by responding to discovery, participating in

25  the mediation process, and taking the risk of stepping

26

27  forward on behalf of the class. *Coca-Cola*, 200 F.R.D. at

28
                              27

694; *see, e.g., Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving $50,000 participation award to plaintiffs); *Glass v. UBS Financial Services, Inc.*, 2007 WL 221862, at *17 (N.D. Cal. Jan. 26, 2007) (approving $25,000 enhancement to each named plaintiff).

In this case, among other things, the named Plaintiff: (1) travelled from Bakersfield to Sacramento for mediation sessions (2) assisted Counsel in investigating and substantiating the claims alleged in this action; (3) assisted in the preparation of the complaint in this action; (4) produced evidentiary documents to Counsel; and (5) assisted in the settlement of this litigation. *See* Mallison Decl.; Declarations of Octavio Alvarado, Pablo Martinez, Omar Gomez, DanielGomez, and Jose de Jesus Garcia, Docs. 61-65. Moreover, as with any plaintiff who files a civil action, Plaintiffs undertook the financial risk that, in the event of a judgment in favor of Defendant in this action, they could have been personally responsible for the costs awarded in favor of the Defendant. *See, e.g., Whiteway v. Fed Ex Kinkos Office & Print Services*, Inc., No. C 08-2320 SBA, 2007 WL 4531783, at **2-4 (N.D. Cal. Dec. 17, 2007).

G.   **Claims Administrator Fee.**

    The Class Notice provided that the Claims
Administrator would receive a few of up to $15,000.
Plaintiffs request that the full amount of $15,000 be
approved as Simpluris' fee.  Doc. 70 at 25-26.  The
Declaration of Michael Bui, a Case Manager at Simpluris,
explains the tasks undertaken by Simpluris to accomplish
notify the Class of the settlement and administer its
terms.  Mr. Bui estimates administration costs of
$15,000, taking into consideration both costs incurred to
date and those anticipated to be incurred in the future.
This request is substantially lower than previous
administrator fees awarded in this District.  See
Vasquez, 266 F.R.D.at 483-84 ($25,000 administrator fee
awarded in wage and hour case involving 177 potential
class members).

                    **V. CONCLUSION**

    For all the reasons set forth above:

    (1) The Settlement Class is CERTIFIED;

    (2) The Class Settlement is APPROVED;

    (3) The payment of $165,523 in attorney's fees and
$10,827.70 in costs is APPROVED;

    (4) They payment of a $7,500 enhancement to the named
Plaintiffs Octavio Alvarado, Pablo Martinez, Omar Gomez,

Daniel Gomez, and Jose de Jesus Garcia is APPROVED;

    (5) The payment of $15,000 to the Settlement Administrator is APPROVED.

    Plaintiffs shall submit a form of order consistent with this decision within five (5) days following electronic service.

SO ORDERED
Dated: May 17, 2011

                              **/s/ Oliver W. Wanger**
                           **United States District Judge**